HULL OF A NEW BRIG (READ v.). See Case No. 11,609.

## Case No. 6,859.

### The HULL OF A NEW SHIP.

[2 Ware (Dav. 199) 203.][1]

District Court, D. Maine. Sept. Term, 1842.

ADMIRALTY JURISDICTION — MECHANIC'S LIEN — PARTIES TO SUIT — HYPOTHECATION OF AFTER-ACQUIRED PROPERTY—PRIORITY OF LIENS—SUBROGATION — ASSIGNMENT OF CLAIM — SPLITTING OF CLAIM.

1. When the local law gives a lien to material-men and mechanics, for their demands against a ship, it may be enforced in the admiralty.

[Cited in The Richard Busteed, Case No. 11,764; The Kate Tremaine, Id. 7,622.]

2. All the privileged creditors may unite in one libel, or if a libel has been filed by any one separately, then others may come in by petition and make themselves parties to the suit.

[Cited in The Prinz Georg, 19 Fed. 654.]

3. A valid contract of hypothecation may be made not only of things which the party has at the time of the contract, but of what he expects to have, and of things not then in existence. It will attach to, and find, the party's interest in the thing as soon as it comes into being.

4. A ship-builder, before he commenced building a vessel, entered into a contract with a merchant by which he hypothecated the vessel to be built for advances. This was held to be a valid hypothecation of the builder's interest in the vessel, and to give a lien upon it.

5. By a statute of Maine, material-men and mechanics have a lien on vessels for materials and labor employed in making it, which has precedence over the claims of all other creditors. The lien created by the contract of hypothecation was postponed to those of the material-men and laborers.

[Cited in The Hiawatha, Case No. 6,453.]

6. Nor was the hypothecary creditor subrogated to their privilege, merely by paying their claims on orders drawn by the builder.

7. But when he actually furnished materials, he was allowed to claim concurrently with them.

1 [Reported by Edward H. Daveis, Esq.]

8. When a creditor transfers his debt, the assignment of the debt carries with it all the accessory obligations, as pawns, hypothecations, or sureties, by which the debt is secured.

[Cited in The Sarah J. Weed, Case No. 12,350; Hooper v. Robinson, 98 U. S. 538. Approved in The New Idea, 60 Fed. 294.]

9. But where a creditor has a debt due him on a single contract or obligation, he cannot divide it by assigning part to one and part to another so as to enable each assignee to maintain a separate action without the assent of the debtor.

This was a libel by Richard Abbott, a carpenter, against the hull of a new ship, for work and labor performed by him in building her. She was launched March 31, 1842, and the libel was filed the next day, April 1. He claimed a privileged lien on the vessel for his pay, under a law of the state which provides, that "any ship-carpenter, calker, blacksmith, joiner, or other person, who shall perform labor or furnish materials, for, or on account of any vessel, building or standing on the stocks, or under repairs after having been launched, shall have a lien on such vessel for his wages and materials until four days after such vessel is launched, or such repairs have been completed" (Rev. St. Me. c. 125, § 35), and giving them a priority and precedence over all other creditors of the owner. After the vessel was arrested on this libel, a large number of other creditors, amounting to thirty-one in all, intervened by petition, claiming to have similar demands and praying to have their liens allowed, and to be paid out of the proceeds of the ship.

The libel and all the petitions were committed to S. Longfellow, Esq., a master in chancery, to examine into the several claims set forth, and to report to the court: First. What sum is justly due to each of said libellants and petitioners for labor performed and materials furnished for and on account of said ship. Second. Where any of the parties have furnished materials for or on account of said ship, and the whole of the same have not been used in the building of the vessel, to distinguish and report: (1) Such as have been used, from such as have not been used. (2) What part of the materials not used were furnished by the material-men, under a just belief and expectation that they were wanted for the vessel and intended to be used in the construction of the same. Third. To report what sums, if any, are claimed as liens on the vessel for money paid to the workmen for labor in satisfaction of their wages, or to material-men for materials furnished, and at whose request they were paid.

The vessel was sold on an interlocutory order for $13,000, and the proceeds paid into the registry. The master reported a large number of debts due to laborers and material-men about which there was no controversy. With respect to two large debts, which were claimed as chargeable on the vessel in concurrence with those of the ma-

terial-men and mechanics, he reported the facts specially. One was a claim of Purinton for $7,727.15, and one of Richardson for $1,558.20. The owner, Knight, made no defense, but the question, whether these were liens on the vessel, and if so whether they were of the same rank and entitled to be paid concurrently and pro rata with the material-men and laborers, the fund being insufficient to pay the whole was argued by—

Willis & Daveis, for Purinton and Richardson.

Mr. Fox, for opposing creditors.

WARE, District Judge. With respect to most of the claims that were presented and proved before the master, there was no controversy before him, and there has been no opposition to their allowance before me. Being for labor performed and materials furnished for the vessel and actually used, it is admitted that under the statute they attach to her as privileged debts, and the suits having been commenced within four days after she was launched, the vessel is bound for them in specie. Being maritime liens, there is no doubt that they may be enforced by process in the admiralty where all may join and have their rights settled in a single suit, or may intervene for their own interest, after a libel has been filed, and have the whole matter disposed of in, or under, one proceeding or one attachment, instead of having as many suits as there are creditors. Where the local law gives a lien, it may be enforced in the admiralty. Peyroux v. Howard, 7 Pet. [32 U. S.] 324; The General Smith, 4 Wheat. [17 U. S.] 438.

Two of the claims against the vessel have been contested; not by the owner, he admits them, but by the other creditors, and the contest has been not so much whether these are privileged debts against the vessel, as whether they stand in the same rank of privilege with the others. The first and the most considerable, is Purinton's claim. Before Knight began to build the ship he entered into a contract by which Purinton agreed to make advances to him for the purchase of materials and payment of the laborers, while the ship was being built, and on the part of Knight it was agreed that he should have a lien on the ship for his security. A doubt was suggested at the argument whether a contract for the hypothecation of a thing not in existence at the time of the contract is not ipso jure void. It is true that one cannot give an interest or lien on future things by way of pawn or pledge, because the delivery of the possession is necessary for the completion of this contract. But an interest may be given by a contract of hypothecation independent of the possession; and I see nothing in the nature of the thing that should prevent one from giving such a right, not only in what he has in present possession, but in what he may afterwards acquire. A man may by a valid contract of sale dispose not only of what he has at the time of the contract, but by such a contract he may bind his future acquisitions. As when one sells his harvest of corn before it is grown, or his share in a fishing voyage before the fish are taken. There is no doubt that such contracts are binding on the parties when not prohibited by any special law, although there is nothing in being at the time to which they apply. They attach to and bind the thing as soon as it comes into existence. If future acquisitions, not in existence at the time, may be bound by a contract of sale, so that the interest passes to the vendee as soon as they come into existence, no obvious reason occurs to me why they may not as well be bound by a contract of hypothecation. In the case of Macomber v. Parker, 14 Pick. 497, such a contract for the hypothecation of bricks, before they were made, was held to be a valid and binding contract, and that it attached and gave to the creditor an interest in the bricks as fast as they were made. Story, Bailm. § 294. A contract for the hypothecation of one's future acquisitions not yet in being was clearly valid by the Roman law. "Quae nondum sunt, futura tamen sunt, hypothecae dari possunt; ut fructus pendentes, partus ancillae, foetus pecorum, et ea quae nascantur, sint hypothecae obligata." Dig. 20, 1, 15; Dom. Lois Civiles, liv. 3, tit. 1, § 1, No. 5.

There is then no reason why the contract of Knight should not operate as a valid hypothecation of the vessel, and bind the property while it was in progress and as fast as it was built. It was obligatory between the parties, and it binds Knight's interest in the vessel. Whether Purinton could hold it under this contract, against a third person, as a purchaser or an attaching creditor without notice, is not necessary to be considered in this case. The only question here is, whether it gave him a lien holding the same rank of privilege with those of the mechanics and material-men. The lien of Purinton stands on his contract, and can have no other force and extent than what is derived from that. That of the material-men and laborers has its origin in the law independent of contract, and is to be allowed such an extent and operation as will carry into effect the intention of the law-maker. The lien of Purinton covers the whole interest which Knight had in the vessel, but no more. He could give no more. "Nemo plus juris in alium transferre potest quam ipse haberet." Dig. 50, 18, 54. If this had been a contract of sale instead of hypothecation, the vendee, when the ship was completed, would have taken precisely the interest which the vendor then had. That would have been the whole ship, subject to the unpaid demands for labor and ma-

terials used in her construction, and would have taken precedence of these, if process was not sued out within four days after she was launched. But during that time the rights of the material-men and laborers continued under the statute, as privileged liens having precedence over all others. The builder could give no more extensive rights by a contract of hypothecation than he could by a sale. The title of Purinton under his contract must therefore be postponed to the liens of the opposing creditors who claim under the statute.

There is another ground on which he claims to be paid part of his demand concurrently with those who claim under the statute lien. It is this, that the advances made by him were in payment of this very class of creditors. The amount under this head is $2,368.43, and the argument is that he may be substituted as a privileged creditor in the place of those whose claims he has paid. These payments were made by him on orders drawn by Knight in favor of the workmen, and the payments extinguished the debts. They were not kept alive by an assignment of them by the creditors, but by the payment they were absolutely extinguished and gone, and Purinton became a creditor of Knight, not as assignee of the original debt, but by virtue of the order which was paid. When the debt was extinguished, the lien which was incidental to it was gone also. The only way by which the lien could be preserved would have been by an assignment of the debt, unless there had been a special agreement with Knight, the debtor, that upon the payment, the lien should be continued in his favor. Dom. Lois Civiles, liv. 3, tit. 1, § 6. No. 5. By such an agreement, in the Roman law, the new creditor might be subrogated to the privileges of the old one without an assignment of the debt, and in our law perhaps the same might be allowed where it did not conflict with the rights of other parties. But these advances and payments were made under the contract. The ship was hypothecated as a security for them, and by this contract Purinton was put in the place of the owner. If either of these precautions had been taken, it is at least doubtful whether it would have strengthened his claim.

Another part of his demand, for which he claims an equal privilege with the material-men and mechanics, is for money procured by him and expended on the ship, in payment for materials and of the wages of the workmen. In this is included $838.75, obtained on notes of Knight, indorsed and taken up and paid by him, and also $2,500 procured on Knight's note, indorsed by him, which remains unpaid, and which, as Knight is insolvent, must be paid by him. Here again, the security originally contemplated was the hypothecation of the ship. It is a good and valid security, and covers all Knight's interest in it. But its operation is

merely to put the lender of the money in the place of the builder. It gives him no greater rights than Knight had. It does not enable him to come in competition with those who have the statute lien.

There is a small part of his demand, amounting to $30, which is admitted to be for materials furnished, and which were actually used in the construction of the ship. For this, I think, notwithstanding his contract, he may be allowed to claim in concurrence with the other material-men and mechanics. He claims also another small sum of $11.21 as assignee of Foss. For this, Foss had a lien under the statute, as it is admitted to have been for materials furnished for the ship. If Foss had a lien, why should not the privilege follow the debt into the hands of his assignee? The debt is the principal and the lien is the incident, and the general rule is that the principal carries with it the accessory. When a debt secured by a mortgage is assigned, in equity it carries with it the mortgagee's interest in the land. The interest in the land is in fact nothing independent of the debt, and, after the assignment of the debt, the legal interest remains in the mortgagee as a mere naked trustee for the benefit of the assignee of the debt. 4 Kent, Comm. 194; 2 Story, Eq. Jur. §§ 1016, 1023, note. A payment of the debt extinguishes the interest in the land without any formal reconveyance. Gray v. Jenks [Case No. 5,720]. Why should not the same doctrine hold in the mortgage or hypothecation of personal chattels. There is the same reason in one case as the other. If a lien creditor cannot transfer his privilege with his debt, he does not have the full benefit of his contract. For if the debtor happens to be insolvent, as in this case, the creditor cannot avail himself of the debt by an assignment unless he can transfer his privilege with it. For this sum, Purinton succeeds to all the rights of his assignee, and is entitled to the lien. The same principles prevailed in the Roman law. A creditor, by a simple assignment or cession of the debt, transferred to his assignee all the accessory obligations and securities by which it was secured to him. The assignee had the same benefit from pawns and hypothecations to which the assignor was entitled. Dig. 18, 4, 6–23. Dom. Lois Civiles, liv. 3, tit. 1, § 6, No. 1; Warkoenig, Jus Rom. Priv. §§ 443, 448; 7 Toullier, Droit Civil, No. 120. The accessorial being a mere dependency on the principal obligation, could not be assigned separately from it. Warkoenig, Jus Rom. Priv. § 440, No. 3.

It is objected that if a creditor, having a lien, may thus assign his privilege with his debt, he may, by assigning his claim to different persons, split a single demand into a number of debts, and thus harass the debtor by a multiplicity of suits. But this consequence will not necessarily follow. In strict law a chose in action cannot be assigned at

all. The ancient rigor of the common law in this particular, has, in favor of commerce, long been relaxed. An assignment will be supported in law, and the assignee may enforce his rights by a suit in the name of the assignor. But a creditor is not allowed to divide a single debt into parts, so as to give to each a separate action in his name, without the assent of the debtor. The debtor has a right to insist on the singleness of the obligation, and to be protected against a multiplicity of suits. An order, drawn by the creditor for the whole debt, is an assignment of the fund, and as soon as the debtor is notified, he becomes, even without his own consent, obligated to pay to the assignee; but an order drawn for a part of it will not bind him unless he assents to it by accepting the draft. Mandeville v. Welch, 5 Wheat. [18 U. S.] 277; Tiernan v. Jackson, 5 Pet. [30 U. S.] 580.

This equitable temperament of the creditor's right, which prevents him from dividing a single obligation into several by assigning part of it to one and part to another, is recognized in the Roman law. He might assign part of his debt, but not so as to make it more onerous to the debtor. When a single debt was divided into several, the debtor was not rendered liable to several actions, but he might require all the assignees to join in one suit and receive the whole debt at one time. 2 Warkoenig, Jus Rom. Priv. No. 442; 7 Toullier, Droit Civil, No. 120, note.

The other contested claim is that of Richardson. This amounts to $1,552.20, and is admitted to be, for the greater part, for materials actually used in the construction of the ship. The whole were furnished under a special contract, by which it was agreed that 'Richardson is to hold a lien on said vessel and the timber until paid for, and it is also agreed that the said timber and planks are to be paid for when said vessel shall be built and ready to launch, or within four days after being launched.' The lien which was intended to be created by the contract, is precisely coëxtensive with that given by the statute, and to the extent of the materials actually used in the construction of the vessel, it is entitled to all the privileges of the statute lien. If the excess had been small and had been furnished under a belief that the whole was wanted and intended to be used in building the ship. I should think that the lien ought to extend to the whole. But the excess here was considerable, and it is in proof that, at the time when the contract was made, Richardson was informed that the whole might not be wanted for the vessel. Now, though the contract might create a valid hypothecation of the vessel for the whole amount of the debt, against the owner and all claiming under him with notice, this will not place him, as to the portion of materials not used, in the same rank of privilege with the laborers and material-men who claim under the statute. For this part of the debt his lien must be postponed to theirs. The statute privilege extends only to materials which are furnished for the vessel and intended to be actually used in building it.

## Interlocutory Decree.

Maine District, ss. District Court, December Term, 1842. In the Matter of Richard Abbott and Others, Libellants and Petitioners, vs. The Hull of a New Ship.

And now on the coming in of the master's report, the parties were heard by their counsel on the acceptance of the same; in consideration whereof, it is ordered and decreed that the same be accepted and confirmed in all its parts, except as is hereinafter provided, and the several claims and demands therein reported and allowed are declared to be liens on the vessel, which is decreed to be subject to the same in the order and rank of privilege hereinafter stated, viz.: (The several claims of the first class, amounting to $6213.55, are here specified in detail in the same manner as in the final decree.) And it is ordered that the several claims above named, with the costs, be first paid from the proceeds of the sale, when in the registry, and if there is not enough to pay the whole in full, that each be paid pro rata in proportion to the sums allowed. And it is further ordered, declared, and decreed, that the several claims hereinafter named are allowed as liens on the vessel in the second rank, and are to be paid from the proceeds of the sale of the vessel with costs fully, if the proceeds are sufficient, and if not, each to be paid pro rata in proportion to the claim allowed, viz.:

| | |
|---|---:|
| John Purinton | $5634 97 |
| Joshua Richardson | 228 83 |
| Thomas E. Knight | 1323 84 |
| Robert H. Knight | 1179 12 |
| Total | $8366 76 |

And it is further ordered and decreed that the claim of John Purinton of the sum of $2019.97 be disallowed, the same not being a lien on the vessel.          Ashur Ware.

December 10, 1842.

## Final Decree.

Maine District, ss. District Court of the United States, December Term, 1842, Holden by Adjournment on the First Tuesday, being the Third Day of January, A. D. 1843. In the Matter of Richard Abbott et als., Libellants and Petitioners, vs. The Hull of a New Ship.

Upon the return, by the marshal, of the interlocutory order of sale issued in this case, it appears that the said Hull of a New Ship was sold at public vendue, on the seventh day of November last past. for the sum of $13,000. That the costs and charges of sale, and of custody and expenses attending the keeping of said vessel, from the first day of April last past to the said day of sale, is $421.28. and the balance, being $12,578.72, had been, pursuant to said order, paid into the registry of the court. It is therefore ordered, that

the same be paid out of the registry and distributed among the several libellants and petitioners, according to the decree passed herein on the tenth day of December last, in the manner following, viz., to those in the first class of liens, as follows:

| | | |
|---|---|---|
| To Richard Abbott | in full.. | $ 199 75 |
| Isaac Milliken | do.... | 101 33 |
| David Allen | do.... | 84 20 |
| Joseph A. Means | do.... | 9 77 |
| George Chase | do.... | 7 63 |
| Charles F. Safford | do.... | 42 59 |
| Ebenezer C. Field | do.... | 22 29 |
| Alpha Turner | do.... | 12 04 |
| Tristram C. Stevens | do.... | 361 75 |
| Ezra Harford | do.... | 383 33 |
| Joshua P. Chamberlain | do.... | 454 92 |
| Mathew Gerrish | do.... | 115 08 |
| Nathan Chapman | do.... | 20 00 |
| F. Bradbury & Co. | do.... | 22 62 |
| Joshua Richardson | do.... | 1329 37 |
| John C. Brooks | do.... | 977 49 |
| Staples & Bartol | do.... | 1088 89 |
| Blanchard & Foye | do.... | 37 08 |
| Forbes & Wilson | do.... | 432 00 |
| John Purinton | do.... | 72 21 |
| Elez'r Wyer, jr., & Co. | do.... | 24 10 |
| J. R. Mathews & S. Fogg | do.... | 95 83 |
| John Swett | do.... | 151 14 |
| Reuben Allen | do.... | 20 20 |
| James Breslin et al. | do.... | 3 64 |
| George Marston | do.... | 34 |
| Joseph F. Sawyer | do.... | 42 54 |
| Joshua Maxwell | do.... | 18 78 |
| J. Symonds & A. Jordan | do.... | 82 64 |
| | | $6213 55 |

And that the costs and charges taxed upon the several libels and petitions be paid out to the several proctors, officers, and others interested therein, viz.:

| Amount taxed on libel of— | |
|---|---|
| Richard Abbott................... $ | 226 39 |
| Isaac Milliken...................... | 34 05 |
| David Allen et als................. | 34 05 |
| Eben C. Field et als.............. | 34 05 |
| Joshua Richardson et als......... | 51 05 |
| J. R. Mathews et als.............. | 34 05 |
| John Swett et als................. | 34 05 |
| Jos. T. Sawyer.................... | 34 05 |
| Joshua Maxwell................... | 34 05 |
| Jos. Symonds et al............... | 34 05 |

| | |
|---|---|
| Amounting in the whole to........ $ | 6,763 39 |
| The balance remaining in registry.. | 5,815 33 |
| | $12,578 72 |

And it is further ordered that after the payment of the aforesaid sums, the balance remaining being insufficient to pay in full the claims allowed as liens on said vessel, in the second rank, there be paid out to each of said claimants pro rata, in proportion to the claim allowed, as follows, viz.:

| | | |
|---|---|---|
| To John Purinton, whose claim as allowed is..... $5634 97 | | |
| the sum of.......... | | $3916 60 |
| To Joshua Richardson, whose claim as allowed is | 228 83 | |
| the sum of.......... | | 159 05 |
| To Thomas E. Knight, whose claim as allowed is | 1323 84 | |
| the sum of..........: | | 920 14 |
| To Robert H. Knight, whose claim as allowed is | 1179 12 | |
| the sum of.......... | | 819 54 |
| | $8366 76 | $5815 33 |

And it is further ordered that the several aforesaid sums be paid out of the registry, for the use and benefit of the respective libellants and petitioners, to their respective proctors of record.

　　Attest　　　　　　　John Mussey, Clerk.

[NOTE. For similar libels filed under Rev. St. Me. c. 125, § 35, see Purinton v. Hull of a New Ship, Case No. 11.473; Sewall v. Same, Id. 12,682. See, also, The Calisto, Id. 2,316; Read v. Hull of a New Brig, Id. 11,609.]